ALBERT LANGELLA ET AL., PROSECUTORS, v. THE CITY OF BAYONNE, JOHN NOTARMASO ET AL., DEFEND-ANTS.

Submitted October 2, 1945, and January 15, 1946—Decided May 1, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutors, *William Boorslein.*

For the defendants, *Aaron A. Melniker, William Rubin, Jesse J. Feinberg* and *A. Alfred Fink.*

The opinion of the court was delivered by

DONGES, J.   The defendant John Notarmaso, having sold the premises at 116 West Twenty-first Street, Bayonne, in which he has for many years conducted a live poultry business, determined to move such business to No. 67 West Twenty-first Street. He made application in August, 1944, for transfer to the new premises of his business which was licensed under an ordinance of the city governing such establishments. Informed by the city health authorities of the changes in the premises necessary to comply with the regulations, he proceeded to have alterations made and they were completed in March, 1945, and were found satisfactory to the health officials.

About this time, on March 20th, 1945, the governing body of the city, after the necessary preliminary steps, adopted a city zoning ordinance. This ordinance placed the premises in question within a residential zone wherein the operation of poultry markets is prohibited, although in the same block, on the opposite side of the street are two such markets that have been operating there for some years. On April 19th, 1945, the defendant Notarmaso made formal application for the transfer of his license and for permission to operate at 67 West Twenty-first Street. Residents in the immediate neighborhood protested. At that time a Zoning Board of Adjustment had not as yet been appointed and the governing body, the Board of Commissioners, undertook to deal with the matter itself. A hearing was held at which the protestants were heard and the defendant was heard, following which the Commissioners by resolution approved and permitted the transfer of the license and the operation of the business at the new location.

*Certiorari* was allowed to review that action and that writ is No. 236 of the October term. Objections to the operation of the market are presented in that case both under the zoning ordinance and under the ordinance governing poultry markets in particular.

After that case had been presented a Board of Adjustment was appointed and commenced to function under the ordinance. Conceiving the possible invalidity of some of the procedural steps theretofore taken, the defendant Notarmaso filed a petition with the Board of Adjustment requesting that body to recommend, under the power given it by the ordinance, to the governing body that a variance of the zoning ordinance be permitted for the premises in question. Notices were served on property owners in the vicinity, the validity of which service is challenged, of a hearing on the question. A hearing was held at which both sides appeared, represented by counsel, and testimony was taken. The Board of Adjustment recommended the variance and the Board of Commissioners received and adopted such recommendation. Case No. 233 of the January term is a rule to show cause why a *certiorari*

should not be allowed to review the second proceeding and its result. Counsel have stipulated that, if the court should determine a writ should go, the cause should be considered as presented on a writ for final determination upon all the questions raised. There is thus presented for decision on the merits the question of the propriety of the operation of a poultry market at this location in the light of the provisions of the zoning ordinance and of the ordinance regulating live poultry markets.

With respect to the latter ordinance, one of the questions raised in the first case concerned the validity of the entire ordinance due to an alleged defect in the penalty clause, but that clause before the submission of the second case was amended to meet this challenge.

The live poultry market ordinance of Bayonne provides in paragraph 7, subsection (b) that "No application for the approval of site upon which it is proposed to establish and conduct such market or place shall be approved by this Board in the following instances: * * * 2. Where a church, school, library, hospital, sanitorium, or other public institution is located within 200 feet of the boundary line of the proposed site." It appears that the synagogue of the Congregation Angudas Achim is located at Nos. 63-5 West Twenty-second Street, and is well within 200 feet of the building in which defendant proposed to conduct his business. The synagogue is on the north side of West Twenty-second Street and the proposed market is on the north side of West Twenty-first Street but is located at the rear of the lot on which it stands. The measurement thus taken does not proceed along public highways and is not the ordinary or the shortest means of access, but is taken in a straight line across private property located on the south side of West Twenty-second Street along a course not open to public travel. The contention of the defendant is that the ordinance must be interpreted to mean a distance of 200 feet along a course accessible to travel.

The case of *Warren Street Chapel* v. *Excise Commissioners*, 56 *N. J. Law* 411, cited by defendants, does not support the contention that such a course may not be measured in a

straight line across private property and must follow a means of access. There the controversy was between a rule applying the shortest means of access and one adopting the ordinary means of access, the former being the one approved by the court, but there was no holding that a straight line measurement could not be employed.

In the cases arising under the control of location of liquor establishments the prevailing rule appears to be that, unless otherwise specifically provided (as it is in many such ordinances), the prescribed distance must be measured in a straight line, rather than in some other manner, such as by the usually traveled route or the street lines. *Commonwealth* v. *Jones,* 142 *Mass.* 573; 8 *N. E. Rep.* 302 (cited in the Warren Street Chapel case, *supra*); *Leland Stanford Junior University* v. *State Board of Equalization,* 1 *Cal.* (2d) 784; 37 *Pac. Rep.* (2d) 84; *Butler* v. *State,* 89 *Ga.* 821; 15 *S. E. Rep.* 763. We think the normal and ordinary meaning of the words used in this ordinance, that the business is prohibited where a church is located within 200 feet of the boundary line of the proposed site, is that the prohibited area is measured 200 feet from such boundary line that is nearest to the church in a straight line regardless of the course followed.

We see no reason why a rule adopted in liquor cases should be relaxed in one involving chicken markets. Indeed, the contrary would appear from the nature of the business, involving as it does noises, odors, and other sanitary and health conditions. The regulation of such businesses has been approved by the courts. *Roich* v. *Union City,* 11 *N. J. Mis. R.* 733; *Greenstein* v. *Bigelow,* 135 *Atl. Rep.* 661. Nor is it material that the church itself is not the complaining party. *Oster* v. *Borough of Westwood,* 13 *N. J. Mis. R.* 771.

Under the circumstances, we are of the opinion that the operation of a live poultry market at the place in question would be a violation of the ordinance regulating such businesses and that the permit to operate it should be set aside. This result makes it unnecessary to deal with the questions arising under the zoning ordinance.

Proceedings set aside.