**YOGURT MASTER, INC., Appellant,**

v.

**Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor (W. Willard Wirtz, Secretary of Labor, United States Department of Labor, substituted as party Appellee in place and stead of Arthur J. Goldberg, resigned,[1] Appellee.**

**No. 19542.**

United States Court of Appeals Fifth Circuit.

Nov. 21, 1962.

---

1. Substituted under Rule 25(d), as amended, Fed.R.Civ.P.

A. R. Surles, Jr., Lakeland, Fla., John Bacheller, Jr., Atlanta, Ga., Fisher & Phillips, Atlanta, Ga., for appellant.

Jacob I. Karro, Acting Asst. Sol., Dept. of Labor, Beate Bloch, Atty., Dept. of Labor, Washington, D. C., Charles Donahue, Solicitor of Labor, Beverley R. Worrell, Regional Atty., Washington, D. C., for appellee.

Before JONES and BELL, Circuit Judges, and CARSWELL, District Judge.

GRIFFIN B. BELL, Circuit Judge.

This is an appeal from the entry of an injunction on the petition of the Secretary of Labor against a manufacturer of dairy products. The petition was based on a violation of §§ 15(a) (1), 15(a) (2) and 15(a) (5) in that appellant failed to comply with the overtime compensation provisions of § 7, and failed to keep adequate records of hours of work as required by § 11(c) of the Fair Labor Standards Act, as amended. Title 29 U.S.C.A. § 201 et seq. Jurisdiction was based on § 17 of the Act.

It is undisputed that appellant did not comply and the sole issue before us, as stipulated, is whether the production of Yogurt and sour cream constitutes the first processing of skimmed milk into dairy products within the meaning of the exemption set out in § 7(c) of the Act.[2]

Appellant processes or produces yogurt and sour cream from dairy products alone

2. "§ 7(a) (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed; * * *.

\* \* \* \* \*

"(c) In the case of an employer engaged in the first processing of milk, buttermilk, whey, skimmed milk, or cream into dairy products, or in the ginning and compressing of cotton, or in the processing of cottonseed, or in the processing of sugar beets, sugar-beet molasses, sugar cane, or maple sap, into sugar (but not refined sugar) or into sirup, the provisions of subsection (a) shall not apply to his employees in any place of employment where he is so engaged; and in the case of an employer engaged in the first processing of, or in canning or packing, perishable or seasonal fresh fruits or vegetables, or in the first processing, within the area of production (as defined by the Secretary), of any agricultural, or horticultural commodity during seasonal operations, or in handling, slaughtering, or dressing poultry or livestock, the provisions of subsection (a), during a period or periods of not more than fourteen workweeks in the aggregate in any calendar year, shall not apply to his employees in any place of employment where he is so engaged."

and an important ingredient in each is fresh skimmed milk. The skimmed milk used is processed in Wisconsin by partially removing its water content and thereby concentrating it from 9% non-fat solids to 36% non-fat solids. This concentration into what is known as condensed skimmed milk is accomplished by heating it to remove the water content, and is done to facilitate handling and transportation and to standardize the non-fat solid content. This process in no way changes the chemical composition of the milk and no foreign ingredients are added to the milk at any time. The skimmed milk is then sold by the processors in Wisconsin to a dairy in Florida, and in turn it is sold to appellant. Then appellant adds back the water removed, thereby returning the skimmed milk to its original state, before using it in making yogurt and sour cream.

The Secretary of Labor, taking the position that the first processing ended in Wisconsin, contends that the first processing exemption does not apply to appellant. He asserts that the processing by appellant is a second processing of the skimmed milk. Appellant, on the other hand argues that removing the water in Wisconsin and adding it back in Florida is all first or a continuous processing short of converting the skimmed milk into marketable products of yogurt and sour cream. The district court found that the fact of the processing in Wisconsin by other parties before appellant's production began defeated the claim of exemption. The holding was to the effect that the processing by appellant was not first, but a subsequent processing.

The exemption provisions of the Act are to be narrowly construed against the employer claiming under them and the burden was on appellant to show application of the exemption to its operations. Arnold v. Ben Kanowsky, Inc., 1960, 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed. 2d 393; Mitchell v. Kentucky Finance Company, 1959, 359 U.S. 290, 295, 79 S. Ct. 756, 3 L.Ed.2d 815; A. H. Phillips, Inc. v. Walling, 1945, 324 U.S. 490, 65 S. Ct. 807, 89 L.Ed. 1095; and O'Meara-

Sterling v. Mitchell, 5 Cir., 1962, 299 F.2d 401. It must be unmistakably clear that the exemption applies, and we must consider the holding of the district court in this light.

Appellant relies on Mitchell v. Oregon Frozen Foods Company, 9 Cir., 1958, 264 F.2d 599, cert. den., 359 U.S. 958, 79 S. Ct. 797, 3 L.Ed.2d 765, and dismissed, 361 U.S. 231, 80 S.Ct. 365, 4 L.Ed.2d 267, a case involving the fruit and vegetable exemption as distinguished from the dairy products exemption. Footnote (2), supra. There the defendant purchased vegetables from farmers. They were then cleaned, sorted, steam blanched and frozen. All could not be put into consumer size packages at the time this was done because of the seasonal rush but as much of the crop as possible was packaged. The balance was put in large bulk containers, kept in cold storage to the end of the peak season, and then re-sorted and re-packaged in consumer size packages. The court held that all of this amounted to first processing. It is to be noted that this holding rested on the foundation of a decision to the same effect by the district court, and thus was buttressed by the clearly erroneous rule. D.C.D.Ore., 1956, 145 F.Supp. 157; and Rule 52(a), Fed.R.Civ.P. The district court stated that first processing was completed when the products were packaged in consumer packages even though delayed, relying on Hendricks v. Di-Giorgio Fruit Corp., N.D.Cal., 1943, 49 F.Supp. 573. That case involved the continuous processing of fresh grapes into wine and brandy in one operation. See also Sugar Creek Creamery Co. v. Walker, 1945, 208 Ark. 639, 187 S.W.2d 178 where the conversion of milk into cheddar cheese and cream into butter, all in the same plant, was held to be first processing, against the contention that the first processing ended with flash pasteurization. The court noted that the first process would end with pasteurization of raw milk for resale as such. Pasteurization, bottling and casing milk for resale was the activity in Perwitz v. Irvindale Farms, Inc., Ga. Ct.App., 1949,

79 Ga.App. 181, 53 S.E.2d 196, and the stacking of milk cases containing the bottled milk was held in such near proximity to the first processing, pasteurization, as to be a part of first processing.

Appellant also relies on the McComb v. Hunt Foods, Inc., 9 Cir., 1948, 167 F.2d 905, one judge dissenting. There the processing of perishable apple cores and peelings purchased from other plants was held to be first processing. The basis of the holding was that first processing was such as was necessary to convert the apple into a non-perishable product, and that the core and peelings which had not theretofore been processed also fell into this category. The separation mechanically of the core and peelings from the apple prior to sale was not looked upon as a first processing by the majority. This case was followed in McComb v. C. H. Musselman Co., 3 Cir., 1948, 167 F.2d 918.

The Oregon Frozen Foods Company case indicates that first processing is anything short of marketing while the Hunt Foods case indicates that it is anything short of being converted into non-perishable form. Neither of these doctrines is controlling on the facts here presented.

The Secretary relies on Walling v. Bridgeman-Russell Co., D.C., Minn., 1942 2 WH Cases 785. That case held the exemption inapplicable to employees engaged in manufacturing ice cream and ice cream mix because of the use of non-dairy ingredients, a question not here presented, and because of the use of dairy products already subjected to first processing. It was applied to employees engaged in the manufacture of butter. Domenico v. Mitchell, 10 Cir., 1956, 232

F.2d 112, is also cited to show the inapplicability of the exemption, as it pertains to the first processing of perishable seasonal fresh fruits or vegetables, to the activities of a Denver vegetable wholesaler. The vegetables had been processed on farms some one hundred miles away by being sorted, graded, packed and shipped.[3] The wholesaler, who resold the vegetables, had his employees whose wages were in question open nineteen out of the twenty vegetable cars under consideration, remove vegetables from some, and add vegetables to others. The contents of eight of the cars were removed and sold locally while eleven of the cars were reshipped.

The rationale of Domenico is of equal force in the situation before us. Appellant purchased the skimmed milk for use as he needed it from a wholesaler in Florida. It has been processed in Wisconsin before being shipped to Florida. The first processing ended, if not in Wisconsin, at least upon arrival in Florida. Appellant was not engaged in first processing by virtue of the work of the employees in question being a part of a continuous processing of skimmed milk that ended in yogurt and sour cream, or by being in reasonable proximity or relation to the first processing.

The district court found that their work was a subsequent processing of skimmed milk as distinguished from a first processing. That finding had adequate factual support in the record. Thus it is that no error appearing, the judgment of the district court should be and is

Affirmed.

---

3. The court ruled that the wholesaler was entitled to a seasonal industry exemp-
tion under § 7(b) (c) of the Act, an exemption not here involved.