## 56470. NATIONAL ADVERTISING COMPANY v. DEPARTMENT OF TRANSPORTATION.

BANKE, Judge.

The appellant, National Advertising Company, appeals the judgment of the trial court affirming a final agency decision of the Commissioner of the Department of Transportation (DOT) denying its application for a permit to erect an outdoor advertising sign adjacent to an interstate highway.

The only issue in this case is the application of Code Ann. § 95A-916 (r) to a "Y" or "half diamond" interchange. A "Y" or "half diamond" interchange is one where there are exit and entrance ramps on only one side of the interchange. Section 95A-916 (r) provides: "No sign authorized by the provisions of subsections (d) and (e) of section 95A-915 hereof shall be erected or maintained which: . . . (r) is located outside of the corporate limits of a municipality and adjacent to an interstate highway within 500 feet of an interchange, intersection at grade, or safety rest area. The foregoing 500 foot zone shall be measured along the interstate highway from the point at which the pavement commences or ceases to widen at exits from or entrances to the main traveled way."

National sought permission to erect a billboard within 500 feet of the west side of the interchange (where there were no exit and entrance ramps), but greater than 500 feet from the point where the ramps merged into the interstate on the east side of the interchange. The application of the statute adopted by the trial judge, which resulted in National's proposed billboard location

being within the prohibited zone, is represented by the following diagram.

1. In its first enumeration of error, National contends that since the language of Code Ann. § 95A-916 (r) is clear and unambiguous, judicial construction of the statute was unauthorized. The gist of National's contention is that the statute sets forth one measurement and that when that measurement is applied to this interchange, its proposed sign location is not within the prohibited zone.

By referencing to the beginning and ending points of the ramps, the effect of the measurement rule set forth in the second sentence of the statute is to extend the distance from the intersecting road of the interchange within which the placement of outdoor advertising signs is prohibited. See for example *Dept. of Transportation v. Spells Sign Co.,* 141 Ga. App. 350 (233 SE2d 435) (1977). Thus, whenever there is at least one ramp on each side of the interchange, application of this specific limitation does not conflict with the general limitation set forth in the first sentence that no signs be erected within 500 feet of the interchange. The prohibited zone on each side becomes the length of the longer ramp on that side plus 500 feet.

However, a literal application of the measurement

rule to a "Y" or "half diamond" interchange results in the authorization of signs within 500 feet of the intersecting highway on its "no-ramps" side, notwithstanding the general prohibition of the statute. It was incumbent on the trial judge to attempt to reconcile this apparent conflict in the statute. "Where there is apparent conflict between different sections of the same statute, the duty of a court is to reconcile them if possible, so as to make them consistent and harmonious with one another. *Cason v. Harn,* 161 Ga. 366 (131 SE 88) (1925)." *Ford Motor Co. v. Carter,* 239 Ga. 657, 661 (238 SE2d 361) (1977). Accordingly, National's first enumeration of error is without merit.

2. The trial judge held that "In the case *sub judice,* there can be no question that Flat Shoals Road is a part of that interchange and the site in this case is clearly within the blocked-out zone contemplated by the Outdoor Advertising Control Act." National contends in its second enumeration of error that this interpretation of the statute violates certain established principles of statutory construction. In its reply brief, the DOT discusses other principles of statutory construction which the trial judge's order fulfills. After a thorough study of these arguments and the law applicable thereto, we affirm the trial judge's construction of the statute. Our reasons are hereinafter stated:

(a) As acknowledged by the parties, there is no statutory or judicial definition of the word " interchange." The DOT urges adoption of the dictionary definition of interchange as "a junction of two or more highways by a system of separate levels that permit traffic to pass from one to another without the crossing at grade of traffic systems." Webster's Third New International Dictionary of the English Language Unabridged, at p. 1177 (B. Grove Ed. 1961). It contends that under this interpretation the intersecting road, Flat Shoals Road, is an integral part of the interchange and that, accordingly, National's permit application was correctly denied.

National contends that even if the dictionary definition "interchange" is adopted, its proposed sign location is not prohibited since there are no ramps on the

west side of the interchange to facilitate movement of traffic from one level to the other.

We find it unnecessary to resolve this issue since, as found by the trial judge, under *either* view Flat Shoals Road is a part of the interchange, and National's proposed location is within 500 feet of this intersecting road. The permit was, therefore, properly denied.

(b) Neither interpretation of the statute presented by National attempts to reconcile the apparent conflict created by application of Code Ann. § 95A-916 (r) to a "Y" interchange. See Division 1, supra. Instead, it is contended that the two provisions of the statute are so integrally related that one provision simply merges into the other and that there is no need for reconciliation.

The DOT's interpretation of the statute does reconcile the apparent conflict. The DOT explains that, as stated in the first sentence of subsection "r," the statute envisions one 500-foot blocked-out zone around the entire interchange and that the second sentence of the statute simply provides instructions for determining that point at which the interchange begins when there is an exit or entrance ramp or both on either or both sides of the interchange. Thus, whenever the specific provision is applicable, it promotes the general prohibition of the statute by allowing no signs within 500 feet of the furthermost point. See *Dept. of Transportation v. Spells Sign Co.,* 141 Ga. App. 350, supra.

It is a well established principle of law that even though an interpretation of a statute by the agency charged with the duty of enforcing it is not conclusive, it is entitled to great weight. See *Belton v. Columbus Fin. &c. Co.,* 127 Ga. App. 770, 772 (195 SE2d 195) (1972). The DOT's interpretation of this statute successfully reconciles the statutory provisions without resorting to a strained construction of its words. Nor does it result in a perversion of the legislative intent behind the statute (see Division 3 below). Accordingly, the trial judge did not err in adopting this construction in his ruling, and National's second enumeration of error is without merit.

3. In its third enumeration of error, National complains that the trial judge erred in denying its

application for a permit inasmuch as the purpose of the statute is met without such an expansion of its terms. Specifically, it contends that motorists exiting and entering the interstate on the east side of the interchange will not be distracted by erection of its sign on the west side of the interchange.

In *Turner Communications Corp. v. Ga. Dept. of Transportation,* 139 Ga. App. 436, 438 (228 SE2d 399) (1976), this court held, " 'In all interpretations, the courts shall look diligently for the intention of the General Assembly.' Code § 102-102 (9); *Lewis v. City of Smyrna,* 214 Ga. 323, 326 (104 SE2d 571); *Ford Motor Co. v. Abercrombie,* 207 Ga. 464, 467 (62 SE2d 209). The intent of the General Assembly, when the entire [Outdoor Advertising Control] Act is read together, is to protect the public *traveling along the highway* from distractions, from aesthetic desecration and from nuisances all associated with the proliferation of signs in a concentrated area along the highway. . .

"The purpose of the present legislation is to regulate the impact of the signs on the driver along the interstate." See also *Dept. of Transportation v. Spells Sign Co.,* 141 Ga. App. 350, 353, supra. In *Spells Sign Co.,* supra, p. 353, we held that "The minimization of distractions by signs in the area of an interchange is precisely the intent and purpose behind the blocked-out zone contemplated in Code Ann. § 95A-916 (r)."

It cannot be held as a matter of law that National's erection of a sign at its proposed location would not create a distraction for eastbound motorists within 500 feet of the interchange (see Division 2, supra) such that their attention would be diverted from the forthcoming merging traffic. The trial judge's interpretation of the statute as creating a 500-foot blocked-out zone on both sides of the interchange is not unnecessarily expansive, but rather it facilitates the legislative goal of reducing the distractions created by outdoor advertising signs at highway interchanges. See also Code Ann. § 95A-103. "This title shall be construed liberally to effectuate its purposes."

*Judgment affirmed. Quillian, P. J., Webb, P. J., Smith, Shulman, Birdsong and Underwood, JJ., concur.*

*Deen, C. J., and McMurray, J., dissent.*

ARGUED SEPTEMBER 12, 1978 — DECIDED FEBRUARY 9, 1979 — REHEARING DENIED MARCH 16, 1979 —

*Nicholson & Meals, E. Penn Nicholson, Paul W. Bonapfel,* for appellant.

*Arthur K. Bolton, Attorney General, Bruce M. Edenfield, Assistant Attorney General,* for appellee.

ON MOTION FOR REHEARING.

On motion for rehearing, the appellant has correctly pointed out that the Department of Transportation had never issued an administrative ruling interpreting Code Ann. § 95A-916 (r) and, therefore, its interpretation of the statute in this case is not entitled to any special consideration. See Division 2 (b) of the opinion. This factor does not require a reversal of our decision, however, since even administrative rulings are adopted only after the court has made an independent determination that they correctly reflect the meaning of the statute. See *Perwitz v. Irvindale Farms, Inc.,* 79 Ga. App. 181, 182 (53 SE2d 196) (1949); *Belton v. Columbus Fin. &c. Co.,* supra.

*Motion for rehearing denied.*

DEEN, Chief Judge, dissenting.

This is the sixth consideration of the issue in this case. After further study of this matter on rehearing I am convinced that the state hearing officer, Joseph J. Fullbright, Sr. was correct in his decision dated October 31, 1977, when he found ". . . that the sign site in question in this appeal is not located to be within 500 feet from the point at which the pavement commences or ceases to widen at the entrance or exit from the main traveled way along the highway, which in this case is the easterly side of the intersection to which said sign is adjacent thereto. Thus a permit may be issued."

"No sign. . . shall be erected or maintained which: (r) is located outside of the corporate limits of a municipality and adjacent to an Interstate highway within 500 feet of

an interchange, intersection at grade, or safety rest area. The *foregoing* 500 foot zone *shall* be measured along the Interstate highway from the point at which the pavement commences or ceases to widen at exits from or entrances to the main traveled way." (Emphasis supplied.) Code Ann. § 95A-916 (r). The word "shall" in the second sentence correctly indicates the issue of only one measurement rule, and the word "foregoing" ties the sentences together creating only one limited area particularly defined by the second sentence. No reference is made to the "no-ramps" side of the "half diamond" interchange. Therefore, to fill in this gap would be judicial usurpation of a legislative prerogative.

I respectfully dissent. I am authorized to state that Judge McMurray joins in this dissent.